IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DAWNICA R. THOMAS**,

               Plaintiff

        v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

             Defendant.

Civil No. 3:11-cv-00533-ST

**OPINION AND
ORDER**

STEWART, Magistrate Judge:

    Plaintiff, Dawnica Thomas, seeks reversal of the Social Security Commissioner's final

decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("the Act"), 42 USC §§ 401-33, and Supplemental Security Income ("SSI")

1 - OPINION AND ORDER

payments under Title XVI of the Act,  42 USC §§ 1381-83f.  This court has jurisdiction under 42 USC § 405(g), incorporated by 42 USC § 1382(c)(3).

All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 USC § 636(c) (docket # 17).

The Commissioner has filed a Motion to Remand for further proceedings (docket # 15).  For the following reasons, that motion is granted.

## PROCEDURAL BACKGROUND

Born in 1971, Ms. Thomas applied for DIB and SSI on April 12, 2006.  Tr. 241-48.[1]  She alleges disability due to left leg, vision, right arm, and memory impairments stemming from a 1987 car accident.  Tr. 317-18.

The Commissioner denied all Ms. Thomas's disability applications[2] initially and upon reconsideration.  Tr. 67-100.  An Administrative Law Judge ("ALJ") held a hearing on May 13, 2009.  Tr. 25-65.  On June 5, 2009, the ALJ found Ms. Thomas not disabled.  Tr. 12-24.  The Appeals Council denied review of that decision on February 24, 2011.  Tr. 1-7.  The Appeals Council decision is a final decision of the Commissioner, subject to review by this court.  20 CFR § 410.670a.

The Commissioner concedes that the ALJ's decision contains legal errors, but opposes an immediate award of DIB and SSI to Ms. Thomas and instead requests a remand for further administrative proceedings.

---

[1]  Citations are to the page(s) indicated in the official transcript of the Administrative Record filed on August 29, 2011 (docket # 6).

[2]  The Administrative Record contains numerous initial disability determinations pertaining to earlier applications not before this court.  Tr. 67-141.

# BACKGROUND

## I.    Medical Record

As the result of a car accident in 1987 at age 15, Ms. Thomas sustained a closed head injury and broken right wrist and forearm.  Tr. 1135.  She required surgery on her right arm, and her head injury caused a residual left side gait deficiency.  Tr. 1086, 1279.  She attended rehabilitative therapy between June 22 and August 3, 1987.  Tr. 1132-46.

In 1992, Ms. Thomas complained of pain in her right wrist.  Tr. 1285.  The physician noted that she walked on the lateral border of her left foot, but had good range of motion in her ankle and good strength.  *Id.*

Between June 2000 and December 2002, Ms. Thomas complained of left foot pain, dizziness, headaches, diarrhea, and sinusitis to her primary care providers.  Tr. 974-77, 989-1014.  On December 23, 2002, a treating medical provider noted Ms. Thomas's gait disturbance and unstable left ankle.  Tr. 989.

On May 5, 2003, Stephen R. Condon, Ph.D., a psychologist, evaluated Ms. Thomas for Disability Determination Services ("DDS").[3]  Tr. 714-19.  Dr. Condon noted that Ms. Thomas wore a brace on her left leg and cited her daily activities, including caring for her four children and part-time work as a gas station attendant.  Tr. 716-17.  He characterized her as "highly motivated to do her best, and seems to have a strong work ethic."  Tr. 719.  Dr. Condon found she had an IQ of 74, which he called "borderline," and diagnosed a cognitive disorder stemming from her 1987 accident

---

[3]  DDS is a federally-funded state agency that makes disability eligibility determinations for the Social Security Administration.  20 CFR §§ 404.1503, 416.903.

and borderline intellectual functioning.  Tr. 718-19.  Dr. Condon also assigned rule-out diagnoses of "personality change due to a general medical condition," a learning disorder, and a Global Assessment of Functioning ("GAF")[4] score of 61.  *Id*.

Joseph H. Diehl, M.D., a neurologist, examined Ms. Thomas for DDS on May 7, 2003. Tr. 720-23.  Noting Ms. Thomas's brain and leg injuries as a result of the 1987 car accident (Tr. 720), he concluded that she continued to experience the residual effects of traumatic brain injury and chronic left leg pain.  Tr. 722.  He reported that Ms. Thomas "has a great deal of difficulty with her remote memory and with her mentation in general" and "will have difficulty with vigorous and active types of work activity" due to her subjective complaints of leg pain and "objective findings of disturbance of gait."  Tr. 723.  Dr. Diehl also stated that Ms  Thomas "does seem to be tolerating part to full time work as a service station attendant at the present time.  There is no finding on examination today that would preclude that type of employment in the future, in my opinion."  *Id.*

Ms. Thomas reported left ankle pain between May and July 2003, and  a physician's assistant noted her abnormal gait following her 1987 brain injury.  Tr. 739.  In April 2004, Ms. Thomas broke her left wrist in an additional motor vehicle accident.  Tr. 775.  In May 2004, Mark Merrell, M.D., an orthopedist, opined that this fracture should gradually heal.  Tr. 732-33.  However, in July 2004, another physician stated that the tissue involved in this fracture "has poor ability to heal" and that Ms. Thomas may have a long-term problem with her left wrist.  Tr. 730.

---

[4]  The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100.  It does not include impairment in functioning due to physical or environmental limitations.  Am. Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL, 4th ed., Text Rev. (2002) 34.

Physician's Assistant Terry Anderson wrote a letter dated August 5, 2004, stating that Ms. Thomas had been a patient at Irrigon Clinic for many years. Tr. 755. He reported that Ms. Thomas has a "left-sided ambulatory problem," "a noticeable limp in her left leg," and "internal rotation or inversion" of her left foot. *Id.* He opined that she can sit well, but is limited in standing and walking, and concluded that "her mental activities are intact, she is able to understand, remember, concentrate, persist, and socially interact and adapt as most other people would be able to. . . The main concern would be any residual of her left had, if there is any, and of course, the limp in her left leg." *Id.*

On March 3, 2005, Kenneth Dudley, Ph.D., a psychologist, performed an additional psychological examination for vocational rehabilitation services. Tr. 635-43. He assessed an IQ of 78, noting this was in the "borderline" range, and stated that Ms. Thomas's performances on memory and recall tests were in the "severely impaired range." Tr. 639-40. Motor testing showed "borderline" results on the right side and "impaired" functioning on the left. Tr. 641. Dr. Dudley assessed a cognitive disorder diagnosis due to the 1987 car accident and a "rule-out" seizure disorder diagnosis. Tr. 642. He concluded that Ms. Thomas carried a GAF of 50[5] and would require workplace accommodation, including work at a slow pace (Tr. 642) and accommodation and management in planning, organizing, and managing demands "without error due to fatigue, pain, or cognitive limitations." Tr. 643.

---

[5]  A GAF of 50 indicates "serious symptoms . . . OR any serious impairment in social, occupational or school functioning . . ." Am. Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL, 4th ed., Text Rev. (2002) 34.

On February 16, 2005, Jennings C. Falcon, II, M.D., a neurologist, evaluated Ms. Thomas's headaches. Tr. 1256-60. He diagnosed chronic tension headaches with superimposed migraines, and recommended preventative medications. Tr. 1260.

PA Anderson wrote additional letters dated June 13 and 16, 2005. Tr. 848-49. On June 13, he stated that Ms. Thomas continues to exhibit an abnormal gait due to head injuries and "left hemiparesis,"[6] as well as chronic fatigue and headaches. Tr. 848. His June 16 letter clarified that his June 13 letter inadvertently "downplayed" Ms. Thomas' left leg pain. Tr. 849.

MRI studies of Ms. Thomas's head were negative in June 2005. Tr. 850, 644.

On December 8, 2005, Dr. Diehl performed a second evaluation for DDS. Tr. 649-53. He found Ms. Thomas's presentation upon examination consistent with her 1987 head injury, and noted her reports of daily dizziness and headaches three to four times per week. Tr. 649. Ms. Thomas had a flat affect, exhibited "marked difficulty" with remote memory and some difficulty with current memory. Tr. 651. Dr. Diehl found her cranial nerves normal and left upper motor strength worse on the left side than the right. *Id.*

Dr. Diehl concluded that Ms. Thomas "obviously has considerable difficulty with her mentation," and "in my opinion the patient's primary disability involves weakness in the left lower extremity and difficulty with ambulation as well as marked decreased visual fields." Tr. 653. He stated that Ms. Thomas could not stand more than two hours at a time and would have difficulty walking more than 5 to 10 minutes at one time. *Id.* Dr. Diehl also stated Ms. Thomas would have difficulty in work situations impacted by dizziness and where "adequate lateral, superior and inferior

---

[6] Hemiparesis is "weakness affecting one side of the body." *Stedman's Medical Dictionary* (2006), *available at* http://dictionary.webmd.com/terms/hemiparesis (last visited April 26, 2012).

visual fields are necessary." *Id.*  Finally, he stated that Ms. Thomas "does seem to be tolerating part time work as a store cashier.  There is no finding on examination today that would preclude continuation of that type of employment." *Id.*  However, "It does seem rather doubtful that she would be able to work much more than 20 hours per week because of her left lower extremity symptoms . . . ." *Id.*

Ms. Thomas again complained of a migraine in April 2006 (Tr. 1151) and of visual problems and pain at a routine annual examination in February 2008.  Tr. 1147.  She was fitted for an orthotic in May 2009.  Tr. 1276.

## II.   **Ms. Thomas's Testimony**

### A.   **Written Testimony**

On April 4, 2003, Ms. Thomas reported doing all daily chores with rest (Tr. 413-14) and receiving help from her parents with money and shopping.  Tr. 414.[7]  She stated that her blindness caused problems reading and writing and that her activities included horses "once a week if I am lucky" and playing with her children weekly.  Tr. 415.

Ms. Thomas completed a "Function Report" on June 7, 2006.  Tr. 324-31.  She stated that she cares for her four children and experiences daily pain.  Tr. 324.  She does not require assistance in her personal care, but it takes her a long time to dress and complete tasks.  Tr. 325.  She prepares "fast foods" and cleans her house daily, although it takes a week to complete all household chores.  Tr. 326.  Ms. Thomas endorsed an ability to pay bills, count change, and use a checkbook.  Tr. 327.

---

[7]  This information is contained in an activities of daily living report, apparently associated with an earlier benefit application.  Tr. 412-18.

She reported no "hobbies and interests" other than caring for her four boys. Tr. 328. Her mother helps her use a calendar to remind her to go places and do things. *Id.*

Ms. Thomas wrote that she has a hard time "walking, reading, spelling and remembering things," as well as "seeing and using my arms." Tr. 329. Finally, she endorsed limitations in lifting, squatting, bending, standing, reaching, walking, kneeling, talking, stair climbing, seeing, and understanding, as well as in memory, completing tasks, concentration, following instructions, and using her hands. *Id.* She reported an ability to lift five pounds, squat 10 minutes, stand a half hour, reach two or three times daily, walk a half city block, and kneel two or three times daily. *Id.*

On June 7, 2006, Ms. Thomas also completed a "Pain Questionnaire." Tr. 403-05. She reported constant pain in her legs, arms, head, and back. Tr. 403. Walking, standing, reading, jumping, climbing stairs, reaching, and using her arm worsens this pain, and rest relieves it. *Id.* She can be active a half hour before requiring rest, and can no longer walk, jump, climb, ride horses, run, draw, or read. Tr. 404. She takes walk and cleans her home daily, and receives help from her mother and four children. Tr. 405.

## B.    Hearing Testimony

At the hearing on May 13, 2009, Ms. Thomas testified that she received a modified high school diploma, reads at a third-grade level, and has four children between age 10 and 14 living with her. Tr. 31. She can calculate money in round numbers. Tr. 32.

She testified that she is "blind in both eyes" without peripheral vision to the left and "none up, none down." Tr. 34. As a result, she had difficulty seeing the screen when working as a cashier. Tr. 26. She walks on her left ankle (Tr. 35), has limited short and long term memory, and cannot read, write, or spell well. Tr. 36. She broke her right arm in one motor vehicle accident and broke

8 - OPINION AND ORDER

her left hand in another and, therefore, has trouble gripping things. Tr. 36, 41. She can lift a dog of bag food to a grocery cart "and that's it." Tr. 41.

Regarding her daily activities, Ms. Thomas testified that she can perform household chores with rest and has someone ride with her when she drives due to her vision impairment. Tr. 38. She has caused "quite a few" motor vehicle accidents due to this limitation. Tr. 43. She cares for her children each day (Tr. 38-39), has headaches three to four days per week (Tr. 40), and experiences dizzy spells. Tr. 44.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 CFR §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 CFR §§ 404.1520(a)(4)(v), 404.1520(a)(4)(v), 416.920(a)(4)(v), 416.920(f); *Yuckert*, 482 US at 142; *Tackett*, 180 F3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 US 137, 146 n5; *Tackett*, 180 F3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F3d at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 CFR §§ 404.1520(g), 416.920(g); *Tackett*, 180 F3d at 1099.

## **THE ALJ'S FINDINGS**

At step two, the ALJ found Ms. Thomas's "left leg deformity," right arm and hand fractures, cognitive disorder, and visual field deficit to be "severe" impairments. Tr. 14. He found that these

impairments did not meet or equal a listed disorder, and concluded that Ms. Thomas retained the RFC to perform sedentary work, with the following limitations:

> [S]he has a third-grade reading level, she can occasionally stoop, crouch, crawl, kneel, balance, and climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally use her left leg for repetitive movements; she can occasionally use her right hand for handling and fingering; she should avoid even moderate exposure to hazards such as unprotected heights and dangerous machinery; she should not be driving automotive equipment; she has no vision from the center of her left eye to the left side; she is able to understand, remember, and carry out short, simple instructions; and she would require an unrushed work pace.

Tr. 18.

At step four, the ALJ found that this RFC precluded performance of Ms. Thomas' past relevant work and noted that she was a "younger individual" on her alleged onset date.  Tr. 22.  He also noted her high school education with modified diploma "indicating limitations in reading, writing, and arithmetic," but found Ms. Thomas able to communicate in English.  Tr. 23.  The ALJ found transferability of job skills immaterial to a disability determination because the Commissioner's "Medical-Vocational Rules" support a finding of "not disabled," regardless of transferable skills.  *Id.*  Relying upon the vocational expert's testimony, the ALJ concluded at step five that Ms. Thomas could perform work in the national economy and, therefore, was not disabled. Tr. 23-24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."  *Bray*, 554 F3d at

11 - OPINION AND ORDER

1222, quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court, however, may not substitute its judgment for that of the Commissioner.  *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir 2005).  This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express.  *Bray*, 554 F3d at 1225-26, citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947); *see also Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003) (citing same).

## DISCUSSION

Ms. Thomas challenges the ALJ's evaluation of:  (1) her testimony; (2) Dr. Dudley's opinion; (3) her RFC; and (4) the ALJ's step five findings addressing her transferable workplace skills and ability to perform work in the national economy.  The Commissioner concedes that the ALJ erroneously evaluated Ms. Thomas's RFC and transferable skills, but asks the court to remand the matter for further proceedings rather than to direct an immediate award of benefits.  Therefore, this court must determine whether the conceded errors, or any other errors alleged by Ms. Thomas, merit an award of benefits.

## I.      Ms. Thomas's Credibility

Ms. Thomas asserts that the ALJ gave "insufficient" reasons for rejecting her symptom testimony.  The Commissioner does not address this argument.

### A.    Legal Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence."  20 CFR §§ 404.1529(a), 416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,* 504 F3d at 1036, *citing Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F3d at 883.

### B.    Analysis

The ALJ found that Ms. Thomas is not as physically or mentally limited as she alleges.  This finding cites Dr. Diehl's opinion, medical records pertaining to Ms. Thomas' feet and headaches, and Dr. Dudley's opinion.  Tr. 20-21.  Ms. Thomas asserts that the ALJ erred regarding the citations

to the medical record pertaining to her gait and to her education. She separately challenges the ALJ's assessment of Dr. Dudley's opinion, discussed below.

### 1.    **Impaired Gait**

The ALJ found that the medical record did not support Ms. Thomas's symptom testimony regarding her left leg. Tr. 18-19. As evidence of a "normal" gait, the ALJ cited numerous medical reports, including the opinions of examining psychologist Dr. Dudley ("Ex. 2F/2"), examining physician Dr. Diehl ("Ex. 4F/1"), a "medical record abstract" prepared by Columbia Basin Wellness Center ("Ex. 20F/52"), Morrow County Health Services medical records, and the opinion of neurologist Dr. Falcon. Tr. 19-20.

To the contrary, Ms. Thomas points to Dr. Falcon's finding of her "normal gait forwards (yet takes 3-10 seconds per step that is of course more challenging and misstepped only six of ten steps)." Tr. 1259. The significance of this sentence is unclear. Dr. Falcon did not indicate whether Ms. Thomas took slow steps in the normal course of walking or whether her "missteps" were due to an abnormally slow pace. Thus, this evidence does not counter the ALJ's findings.

However, the medical record described above, in totality, clearly shows that Ms. Thomas walked with a limp and had difficulty articulating her left ankle. Tr. 653, 722, 739, 755, 848, 1276. Further, as Ms. Thomas indicates, Dr. Diehl found that she had marked callous formation on her left foot due to this abnormal gait. Tr. 722. The ALJ failed to mention this important objective evidence of an abnormal gait.

In light of this evidence, the ALJ erred by finding that Ms. Thomas' symptom testimony regarding her impaired gait was unsupported by the record.

///

14 - OPINION AND ORDER

### 2.    Mental Limitations and Education

The ALJ found that Ms. Thomas received a modified high school diploma and did not repeat grades. Tr. 21. He made this statement in his narrative finding Ms. Thomas' testimony regarding her mental limitations unsupported by the medical record. *Id.* Ms. Thomas challenges the ALJ's inference that this evidence discredits her symptom testimony regarding her mental limitations.

The medical record clearly shows that Ms. Thomas experiences mental limitations. Drs. Condon and Dudley both assessed "borderline" IQ and cognitive disorders. Tr. 641, 718-19. In addition, Dr. Diehl noted "marked" memory difficulties, "considerable" difficulty with simple spelling, arithmetic and mentation. Tr. 651, 653.   The ALJ's conclusion that objective medical evidence does not support Ms. Thomas's alleged mental limitations is simply not based upon the record.

### 3.    Conclusion

The ALJ must provide "clear and convincing" reasons, based upon the record, for rejecting a claimant's symptom testimony. *Lingenfelter*, 504 F3d at 1036. The ALJ's rejection of Ms. Thomas' symptom testimony pertaining to her left leg and mental impairments is flatly contradicted by the record and, therefore, was erroneous.

## II.    Dr. Dudley's Opinion

Ms. Thomas also challenges the ALJ's evaluation of examining psychologist Dr. Dudley's opinion. The Commissioner does not concede this alleged error and further maintains that Dr. Dudley's opinion does not establish disability.

///

///

## A.    Legal Standards

Disability opinions are reserved for the Commissioner.  20 CFR §§ 404.1527(e)(1), 416.927(e)(1).  When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician.  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion and "clear and convincing reasons" for rejecting an uncontradicted opinion.  *Id* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

## B.    Analysis

As previously noted, Dr. Dudley assessed Ms. Thomas with "severely impaired" memory and recall impediments, borderline intellectual functioning, and impaired left-side motor functioning which would require workplace accommodation, including work at a slow pace, and accommodation and management in planning, organizing, and managing demands "without error due to fatigue, pain, or cognitive limitations."  Tr. 643.

The ALJ briefly cited Dr. Dudley's opinion, stating first that Ms. Thomas "did not fidget in her chair, complain of pain, or request breaks" during her evaluation and that she reported a range of activities of daily living.  Tr. 19.  The ALJ later noted that Dr. Dudley found Ms. Thomas's thought process "goal-oriented," with learning deficits upon testing.  Tr. 21.  He concluded that "while Dr. Dudley's opinion is given some weight, the claimant has been working consistently for

many years without any apparent accommodation, and she claimed to medical personnel that she could no longer work because of her physical condition rather than psychological condition." *Id.* Finally, the ALJ stated that the RFC assessment included a limitation on the "complexity" of work that she may perform.  Tr. 22.

Thus, the ALJ rejected Dr. Dudley's opinion regarding Ms. Thomas' mental limitations and associated requirement for workplace accommodation.  The ALJ provided no reason for doing so, other than stating that Ms. Thomas allegedly told medical personnel she could not work due to physical impairments.  Tr. 21.  However, the record clearly shows that Ms. Thomas alleged a disability due, in part, to her learning and memory impairments.  Tr. 317.  She also directly testified that her mental limitations contributed to her inability to work.  Tr. 36.  Thus, the ALJ committed error by  failing to provide either a "specific and legitimate" or a "clear and convincing" reason to reject Dr. Dudley's opinion.

## III.    <u>RFC Assessment</u>

Ms. Thomas argues that the ALJ's RFC assessment erroneously omitted her visual limitations.  She does not specifically assert additional errors regarding her RFC, although, by implication, her challenges to the ALJ's findings pertaining to her credibility and Dr. Dudley's opinion also imply error in the ALJ's RFC assessment.  The Commissioner concedes error in the ALJ's RFC finding that Ms. Thomas should work at an "unrushed" pace, but only tangentially addresses Ms. Thomas's claim of error regarding visual limitations.

///

///

## A.    Legal Standards

Once a claimant establishes a medically-determinable impairment that does not meet a "Listed" disorder at step three in the sequential proceedings, the ALJ must assess the claimant's RFC.  20 CFR §§ 404.1520(e), 416.920(e).  The RFC represents all of a claimant's work-related limitations, including non-severe limitations.  20 CFR §§ 404.1545(a)(1-2), 416.945(a)(1-2).  In making this assessment, the ALJ considers "all of the relevant medical and other evidence," as well as a claimant's testimony and lay testimony describing the claimant's limitations. 20 CFR §§ 404.1545(a)(3), 416.945(a)(3).

## B.    Analysis

Because the ALJ's findings regarding Ms. Thomas's testimony and Dr. Dudley's opinion cannot be sustained, the RFC assessment pertaining to that evidence is flawed and also cannot be sustained.

In addition, Ms.  Thomas asserts that the RFC failed to properly account for her visual limitations.  In that regard, she cites Dr. Diehl's finding of reduced lateral, superior and inferior visual fields:  "Visual fields are markedly abnormal by confrontation.  On either side, the lateral visual field measures approximately 60 degrees.  Superior and inferior visual fields on either side measure approximately 40 degrees."  Tr. 651.  This is consistent with Ms. Thomas's testimony that she has no peripheral vision to the left, up or down.  Tr. 34.

The ALJ discussed Dr. Diehl's opinion and cited his finding of "decreased visual fields," but found only that Ms. Thomas has "no vision from the center of her left eye to the left side."  Tr. 18.  As the Commissioner concedes, this finding does not accurately reflect Dr. Diehl's report that

Ms. Thomas had visual limitations "on either side." Thus, the ALJ's RFC analysis regarding

Ms. Thomas's visual limitations does not accurately reflect the record.

**IV.    Step Five Findings**

Finally, Ms. Thomas asserts that the ALJ erred in finding at step five that she could perform

work in the national economy. The Commissioner concedes this error that the ALJ erred at step five

by failing to make specific findings regarding Ms. Thomas's transferable skills. *Bray*, 554 F3d at

1223. Because this error alone requires a new RFC assessment, Ms. Thomas's other arguments

pertaining to the ALJ's step five finding need not be addressed.

**V.    Remand**

As discussed above, the ALJ erroneously assessed Ms. Thomas's testimony as to her physical

and mental impairments, Dr. Dudley's opinion, and Ms. Thomas's visual limitations. As a result,

the RFC assessment was flawed, such that the ALJ's step five findings also are flawed.

The decision whether to remand for further proceedings or for immediate payment of benefits

is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000), *cert*

*denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an

award of benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is insufficient to support

the Commissioner's decision. *Strauss v. Comm'r*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting

*Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The court may not award benefits punitively,

and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.

*Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F3d at 876, citing *Bunnell v. Sullivan*, 947 F2d 871, 348 (9th Cir 2003) (*en banc*). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

The Commissioner contends that the matter must be remanded for further proceedings to address the ALJ's finding that Ms. Thomas required an "unrushed pace" and the related ambiguities in Dr. Dudley's opinion. Ms. Thomas testified that she experiences short and long term memory problems and reads at a third-grade level. Tr. 6, 36. Dr. Dudley stated that Ms. Thomas exhibited "severely impaired" memory. Tr. 639. While the ALJ cited Ms. Thomas's third-grade reading level (Tr. 50), neither the ALJ nor Ms. Thomas's counsel asked the vocational expert to consider specific work-related limitations pertaining to Ms. Thomas' mental abilities. Tr. 50-65. Further, while Ms. Thomas's counsel asked the vocational expert to consider "unhurried" work, in response to direct questioning addressing the effect of an unspecified slow pace in employment as a parking lot cashier, the vocational expert responded "well, I don't know." Tr. 59.

As evidence of her disability if the improperly omitted evidence is credited, Ms. Thomas points to a vocational rehabilitation counselor's report that she required unspecified accommodation in a past job at Safeway. Tr. 940. This evidence states, in entirety:

> Dawnica is working at local Safeway store.  She was in jeopardy of losing the job she had just gotten.  The job developer . . . went and spoke to . . . management . . . to explain about Dawnica's disability and special needs.  The manager was very receptive and willing to do whatever was needed to help the client be successful in her job at Safeway.

Tr. 940.

This evidence does not establish specific limitations Ms. Thomas faced in this job or what accommodations the employer provided.  Thus, it cannot establish disability under a "credit as true" analysis.

Ms. Thomas also asserts that in response to the first hypothetical question containing all of her limitations, the vocational expert testified that she could not perform any jobs existing in the national economy.  Tr. 50-52.  However, that testimony was based on the erroneous assumption by the vocational expert that Ms. Thomas's limitations in handling and fingering arose after her past work as a cashier.  Tr. 53.  When corrected by the ALJ that Ms. Thomas possessed those limitations when successfully working as a cashier, the vocational expert identified other potential jobs that she could perform.  Tr. 53-54.  Thus, an outstanding issue remains whether Ms. Thomas can perform those other jobs if the improperly omitted evidence is credited as true.

The court is mindful of the delay in Ms. Thomas's applications for DIB and SSI.  However, the Ninth Circuit specifically holds that this court cannot direct an award of benefits unless a finding of disability is supported by a credit-as-true analysis.  Thus, this case must be remanded for further proceedings.

Upon remand, the ALJ must properly consider Ms. Thomas's testimony and Dr. Dudley's opinion.  If necessary, the ALJ must then revise his RFC findings and subsequently make appropriate step four and five findings.

21 - OPINION AND ORDER

## ORDER

For the reasons above, the Commissioner's Motion to Remand (docket # 15) is GRANTED, and the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 USC § 405(g) for further proceedings.

Dated this 22nd day of May, 2012.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

22 - OPINION AND ORDER